Trenga



FILED
MAY - 9 2019
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

COMPLAINT UNDER CIVIL RIGHTS ACT 42 U.S.C. § 1983

Action Number 1:19-CV-562-AJT/MSN
(To be supplied by the Clerk, U.S. District Court)

Please fill out this complaint form completely. The Court needs the information requested in order to assure that your complaint is processed as quickly as possible and that all your claims are addressed. Please print/write legibly or type.

I. PARTIES

A. Plaintiff:

1. (a) Carlos 'A-Lail Muhammad  (b) 2065139
    (Name)                          (Inmate number)

   (c) 10520 Judicial Drive
    (Address)

   Fairfax, Virginia 22030

Plaintiff MUST keep the Clerk of Court notified of any change of address due to transfer or release. If plaintiff fails to keep the Clerk informed of such changes, this action may be dismissed.

Plaintiff is advised that only persons acting under the color of state law are proper defendants under Section 1983. The Commonwealth of Virginia is immune under the Eleventh Amendment. Private parties such as attorneys and other inmates may not be sued under Section 1983. In addition, liability under Section 1983 requires personal action by the defendant that caused you harm. Normally, the Director of the Department of Corrections, wardens, and sheriffs are not liable under Section 1983 when a claim against them rests solely on the fact that they supervise persons who may have violated your rights. In addition, prisons, jails, and departments within an institution are not persons under Section 1983.

B. Defendant(s):

1. (a) Stacey Kincaid    (b) Fairfax County Virginia Sheriff
    (Name)                  (Title/Job Description)

   (c) 10520 Judicial Drive
    (Address)

   Fairfax, Virginia 22030



RECEIVED
MAY - 7 2019
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

2. (a) __Major Shabazz__ (b) __Commander of Inmate Confinement__
   (Name)                (Title/Job Description)

   (c) __10520 Judicial Drive__
   (Address)

   __Fairfax, Virginia 22030__

3. (a) __Dr. Lishan Kasa__ (b) __Chief Medical Officer__
   (Name)                (Title/Job Description)

   (c) __10520 Judicial Drive__
   (Address)

   __Fairfax, Virginia 22030__

If there are additional defendants, please list them on a separate sheet of paper. Provide all identifying information for each defendant named.

**Plaintiff MUST provide a physical address for defendant(s) in order for the Court to serve the complaint. If plaintiff does not provide a physical address for a defendant, that person may be dismissed as a party to this action.**

II. PREVIOUS LAWSUITS

A. Have you ever begun other lawsuits in any state or federal court relating to your imprisonment?   Yes [ ]   No [✓]

B. If your answer to "A" is Yes: You must describe any lawsuit, whether currently pending or closed, in the space below. If there is more than one lawsuit, you must describe each lawsuit on another sheet of paper, using the same outline, and attach hereto.

   1. Parties to previous lawsuit:

   Plaintiff(s)_____

   Defendant(s)_____

   _____

   2. Court (if federal court, name the district; if state court, name the county):

   _____

   3. Date lawsuit filed:_____

   4. Docket number:_____

2

Defendants (cont.)

4. Captain Steve Elbert  (b) Chief, C/D Confinement Branch

(c) 10520 Judicial Drive
Fairfax, Virginia

5. (a) 1st. Lt. Aughavin  (b) ~~Grie~~ Accreditation Manager

(c) 10520 Judicial Drive
Fairfax, Virginia

6. (a) Lieutenant Colonel Kevin Andaralese  (B) Chief Deputy of Administration

(c) 10520 Judicial Drive
Fairfax, Virginia 22030

7. (a) Lieutenant Colonel Mark Sites  (B) Chief Deputy of Operations

(c) 10520 Judicial Drive
Fairfax, Virginia 22030

8. Dr. Lishan Kassa  (b) Chief Physician

(c) 10520 Judicial Drive
Fairfax, Virginia 22030

9. Nurse Practioner Janice Wuri, PHd  (b) Nurse Practitioner

(c) 10520 Judicial Drive
Fairfax, Virginia 22030

10. Sam Osafu  (b) Registered Nurse

(c) 10520 Judicial Drive
Fairfax, Virginia 22030

3

11. (a) Abera Kassaye         (b) Licensed Practical Nurse (LPN)

   C. 10520 Judicial Drive

   Fairfax, Virginia 22030

12. (a) Vera Giles            (b) Medical Administrator

   (c.) 10520 Judicial Drive

   Fairfax, Virginia 22030

13. (a) Sgt. B.A. Pitts        (b). Supervisor (Investigator)

   (c.) 10520 Judicial Drive

   Fairfax, Virginia 22030

14. Medical Director Rauf     (b) Director of Medical Services

   (c) 10520 Judicial Drive

   Fairfax, Virginia 22030

15. 1st Lt. Hovannhyan        (b) Supervisor Classification

   (c) 10520 Judicial Drive

   Fairfax, Virginia 22030

4.

5. Name of Judge to whom case was assigned: _____

_____

6. Disposition (Was case dismissed? Appealed? Is it still pending? What relief was granted, if any?) :

_____

_____

III. **GRIEVANCE PROCEDURE**

A. At what institution did the events concerning your current complaint take place:
Fairfax County Adult Detention Center

B. Does the institution listed in "A" have a grievance procedure? Yes [ ✗ ] No [ ✓ ] You must fill a request for a grievance form. No one that I have known has yet to be granted a grievance form or even seen one, in this facility. We are summarily denied the right to grieve slights.

C. If your answer to "B" is Yes:

1. Did you file a grievance based on this complaint? Yes [ ✓ ] No [ ]

2. If so, where and when: October 4, 2018

3. What was the result? It was ignored. I filed a second on 10-14-18 then a 3rd 10-27-18 (this one was answered). I was denied the right to file a grievance on this occasion.

4. Did you appeal? Yes [ ✓ ] No [ ]

5. Result of appeal: As of yet no written response. Major Jabar Shabazz told me for a month (every time we spoke that he'd ~~come speak to me~~) that he'd meet with me but did not. The last time I ran into him he said "It has been investigated" and nothing more since.

D. If there was no prison grievance procedure in the institution, did you complain to the prison authorities? Yes [ ] No [ ]

If your answer is Yes, what steps did you take? I have complained to Sheriff Stacey A. Kincaid, Lieutenant Colonel Kevin Andariese ~~Anderson~~ and Lt. Colonel Mark W. Sites. To date I have received no answer.

E. If your answer is No, explain why you did not submit your complaint to the prison authorities:

_____

_____

5.

IV. STATEMENT OF THE CLAIM

State here the facts of your case. Describe how each defendant is involved and how you were harmed by their action. Also include the dates, places of events, and constitutional amendments you allege were violated.

If you intend to allege several related claims, number and set forth each claim in a separate paragraph. Attach additional sheets if necessary.

___

___

___

___

___

___

___

V. Legal Claims

___

___

___

___

___

Facts

On October 2, 2018, at approximately 1230-1300 hrs. the inmates of North 3, in the Fairfax County Detention Center, were given an order by the days' Post Deputy to lockdown in their assigned cells. They complied.

They then heard or saw (if they were standing at their doors) an order from one of the many deputies who entered 4N3 to face the back walls of the cells and get on their knees, placing both hands atop their heads. Inmate Carlos 'A-Lail Muhammad complied promptly with each order save the order to place his hands above or on top of his head. He suffers from permanent impairment to his right shoulder (shoulder impingement) and crooked shoulders (due to being attacked with a shovel on 4-25-15).

Mr. Muhammad was not questioned as to why he did not place both hands atop his head. This is likely because his medical history at the facility proves it was known that Mr. Muhammad chronic injuries are as follows: His neck does not have full range of motion, cannot turn but 50% to the right and cannot his chin touch his right shoulder or touch his upper chest on the right; his right shoulder has lost both part of the capacity to reach upward and backwards. More importantly Mr. Muhammad cannot reach behind his back because of the assault on 4-25-15 damaging his frame and the impingement of his right shoulder; he has neural/nerve damage from a nerve possibly pinched between C5 and C6 in his thoracic spine; damage (nerve) in his back and lower spine; and Yet to be diagnosed damage in his right thigh and knee and ankle; and a Deep Vein Thrombosis in his left leg.

On October 2, 2018, as ordered by the deputies, who were garbed in Emergency Response Gear, with weapons, masks/helmets; no insignia to show rank/grade or name tag or identification cards, instructed Muhammad walk backwards, left hand atop his head (only one of Muhammad's was on his head), right to his side, to his cell door. Before the door was opened, before the two or three deputies who were at Muhammad's cell forced Muhammad's right arm behind his back, Mr. Muhammad attempted to explain that he could not be handcuffed behind his back but was told, "Shut the fuck up!", and, "Shut your fucking mouth!"

7

Muhammad did not resist, otherwise he would have been served notice of a rule infraction and undoubtably found guilty, but he was not served any such "write up".

Muhammad also informed the deputies that his neck cannot be bent down but received the same response as he did when he said his right shoulder was permanently damaged and he could not be handcuffed from behind. He was forced to walk virtually doubled over and his arms were jacked up in arm bar; the kind law enforcement use to extract unruly inmates during an attempt to quell emergencies such as riots and fights. There was no riot, fight or an kind of emergency. Muhammad was bewildered as to why deputies showed up in the middle of the day in full emergency response gear to perform what (later) Captain Steve Elbert claimed, later, was a Maximum Security Cell Search. These are either made before 0800 lockout or after 1745 lockdown. The deputies wear their standard issue uniforms and do not conceal, rank, name or face for searching inmates' cells. Factually, emergency response gear and tactics are for situations deemed emergencies not cell searches.

Once Muhammad had been roughly shoved against the Post Station and even more roughly patted down, he was asked, "Now tell me why you can't be handcuffed behind your back", when Muhammad explained the inquiring deputy replied, "Well, it looks like it's bending just fine to me." Muhammad, still handcuffed and being jacked up from behind, with his neck being forced down, was transported to a vacant block. The inmate who was transported ahead and all who came after were treated as thus, without cause for any show or use of force.

Muhammad noticed LPN Woga was present and tried to speak to her but was told, "Shut the fuck up!", and "shut the fuck up and face the wall!" By the time Muhammad's former cellmate and neighbor at the time of this incident, Mundell Phillips arrived, Mr. Muhammad was writhing and moaning in pain. Phillips became agitated because of his concern for Muhammad. Mr. Phillips tried to ask for help but was shut down by the deputies yelling. After all inmates had arrived

8

on the vacant block, Muhammad was separated from his fellow inmates, placed in an empty cell, ordered to stay on his knees even after the door was locked, and left in this position for 20-30 minutes until all but one or two inmates had been escorted back to 4N3. No explation has been given for this isolation.

Once he and the rest of the block were back in their cells a masked deputy said, "We are always in the building, we will come back!", pretending the inmates deserved to be treated as if they had been guilty of riotous behavior. After the deputies exited the block's door (the block has only one door, no emergency fire exits), the inmates were let back out into the Day Room.

Mr. Muhammad immediately, again tried to get help. He was in pain. Years of training in various sports and hand to hand combat, along with weight training and calisthenics has taught Mr. Muhammad to recognize the difference in minor pain and serious pain, small tears and bad tears. At this time pains that were not there before were excrutiatingly calling for attention. Muhammad, then many of the other inmates spent the next hour or two trying to get the Post Deputys' attention.

It was dinner, by the time Muhammad finally was able to express his emergency needs to the Post Deputy. It took another 45 minutes before Mr. Muhammad was sent to Main Medical.

Mr. Muhammad was sent to Main Medical at approximately 1700 hrs. He was intercepted by Sgt. Mollison, who informed Muhammad that he was not suppose to be unescorted at this time of day. Mollison escorted Muhammad to Main Medical.

Licensed Practical Nurse, Kasai was there to "attend" to Mr. Muhammad. Sgt. Mollison said to Kasai, by introduction, "This is Inmate Muhammad. He claims he was injured during the exercise earlier." Muhammad was too preoccupied with striving to tolerate the added pain, the previous pain (from chronic pain), and Mollison's assertion that "he claimed he was injured...", to think about Mollison calling what he was led to believe was a "shake down", an exercise.

9

Kasai looked at Muhammad but did not send Muhammad to E.R. or ask permission of his supervisor. Mr. Muhammad has a chronic history; LPN Kasai has served Muhammad his meds for at least 3 out of the last 4 years and is well aware of Muhammad's physical disabilities. The swelling that Kasai saw; Mr. Muhammad's physical disabilities and chronic history; the reported pain level and the Motrin and icepack Kasai prescribed (without consulting his supervisor) tell both Kasai's belief that Muhammad was experiencing a significant amount of pain and the need for him to go to an Emergency Room. Even the scratches on Muhammad's back and shoulder are positioned in a way that says someone else injured him.

That night the swelling increased. Muhammad's new cellmate, Edward Dawson noticed the new swelling and tried to help Muhammad. It took until later that night for Muhammad to make it to Medical. Still he was not sent to a hospital. He was given another bag of ice a sent back to his block. The next morning Muhammad complained again; showing his shoulder to the Post Deputy and med pass nurse. He was sent to Medical again.

R.N. Sam Osafu "examined" Muhammad, gave him Motrin, ice and made a make shift sling from a ace bandage and gauze. The following day Muhammad was given an actual sling, but still no hospital visit. Even the xray (which Muhammad insisted was unnecessary because he knew it was likely nerve damage and muscle damage and muscle or tendon tears) was another act of Deliberate Indifference.

As already put forth, Mr. Muhammad has been envolved in hand to hand combat training, competitive sports and weight and resistance training most of his life. He has torn ligaments in his left ankle and torn tissue in his left medial thigh. The "on fire" like pain from a tear is unmistakable. Muhammad described his pain to Kasai and Osafu but was ignored. Muhammad has been forced to become familiar with the pain that accompanies nerve damage; he described it to Kasai; Osafu; Sgt Kent (supervisor of nurses); Dr. Ravi Kamath (of Fair Oaks Hospital; on 10-7-18); Nurse Practioner Wuri; Dr. Michael Antonin (Ortho Virginia); Dr. Lishan Kassa; Dr. Jonathan Alfert; Vera Giles and Major Snyder and it to s to get an MRI months into this new ordeal he has yet to have an MRI.

10

and although he has chronic issues his neck is more in need of proper care than he was misled to believe by Dr. Kassa; his shoulders and necks' injuries are not one and the same as Kassa made Mr. Muhammad to believe when she told him in 2017 that his "shoulder impingement" prevented his neck's flexability.

### Exhaustion of Legal Remedies

When Nurse Practioner Wuri sent Muhammad back to Fair Oaks Hospital on 11-26-18, for another xray of his right shoulder although it had been established two days before the first xray at FairOaks Hospital, in Fairfax, Virginia, that his right shoulder had no fractures, had been the conclusion. Muhammad's entire arm was swollen because he was unable to elevate his arm until December 2018, once he was given an extra blanket. This visit, on 11-26-18, brought new evidence to Mr. Muhammad's attention, that he was deceived by Dr. Lishan Kassa, as to his right shoulder and neck's reason(s) for being permanently impaired.

In April 2017, Dr. Kassa told Mr. Muhammad that what she called "Right Shoulder Impingement was also the cause of Mr. Muhammad not being able to fully turn his neck to the right or bend it foward to the right pectoral muscle. On November 26, 2018, Dr. Jonathan Alfert informed Muhammad that his neck was likely partially fractured, which would be the cause of what he explained as "Exaggerated cervical lordosis; Large triangular ossific density anterior to C5-6 which may represent fractured osteophyte, likely chronic."

Dr. Kassa and N.P. Wuri lied to Muhammad; both claiming that no mention was made about the above quoted impression. Another was taken on 12-6 or 12-8-18. Muhammad was allowed to see the xrays of his neck and shoulders and was horror struck to see that his neck is leaning foward, up and to the right; and his shoulders are lopsided. Dr. Kassa read an erroneous xray impression from 2015 to Muhammad to deceive him and when he asked to see the xray from 12-6-2018 she condescendingly asked, "You can read an xray?" He has yet been allowed to see it again but he now has the xray on a DVD sent to him from Fair Oaks. The Detention Center will not help him send this to the court, and special mailing is unavailable.

### Exhaustion of Legal Remedies (B)

The Sheriff, Stacey Kincaid never answered Muhammad's letter to her or the inmate request he sent. Major Shabazz and the other administrators named herein have also refused to answer — except Lt. Aughavin, who refused to give Muhammad a Grievance Form and Captain Elbert, who claimed that Muhammad had been given an offer for Medical assistance — but the video would debunk his claim. Elbert also, as did his superiors and Aughavin, refused to give Muhammad the names of those who are responsible

11

for tearing his rotator cuff, spraining his right shoulder; bruising The right deltoid; chipping a molar further and damaging his right shoulder blade and elbow. He asked Kassa to send him to the hospital for the M.R.I that was recommended on 10-7-18, but was sent back for another xray, then sent to the same orthopedist, Dr. Michael Antonin, who refused to recommend that the shoulder be repaired, which will limit his ability to pursue his career and use of full right arm; and he refused to refer Muhammad to a specialist who could tell if the pain in the right shoulder blade, that is not muscle/skeletal is due to nerve damage. Since when does a doctor refuse to give a referral to a specialist who can find or rule out possible causes of a pain source his training cannot fathom?

This very same orthopedist, Michael Antonin, put forth the supposition that he believed that the shoulder tear did not come from the 10-2-18 assault by the Fairfax County Sheriff Emergency Response Team but Muhammad spent most of the last 3 years in Administrative Segregation; all but 3 months, before this incident transpired. This means he had not the means, nor is there a record of his tearing his right rotator cuff and injuring his shoulder blade in his medical records.

*[For 2 of the 3 months he was not incarcerated]* → Muhammad was forced to go back to work and was taken out of the field because his prior injury does not allow him the level of competence necessary for full service. Mr. Muhammad can no longer stand the pain that comes with standing or sitting up for long hours. The added injuries to his neck, right rotator, right shoulder blade and elbow have further limited use of his right arm. The scratches, the sprain and the contusion resulted from Mr. Muhammad, who is prescribed Xrelto, a blood thinner that guarantees he bruises easily as an anemic, being either struck, yanked around or from being pushed roughly against the Post Station or other wall.

On Friday, March 8, 2019, after 5 months since the new injuries were sustained - and one month shy of 4 years since the original injuries - Muhammad was taken to Fairfax M.R.I. where he submitted to a M.R.I. Although the results will have to be submitted to the court later (because he has yet received the copy he requested from the technician, who name was Mike) it is undoubtable that the pain in his shoulder is due to nerve damage and in his right shoulder blade. The M.R.I. the neurologist recommended in 2016 never happened so it is impossible to tell how much nerve damage is new. Yet the further curvature of Mr. Muhammad's thoracic spine's proximal

12

cause was indeed the masked deputies forcing his neck down, despite their records telling them it was chronically impaired.

Mr. Muhammad's prescription for Glucerna helped reduce the sickness he feels on a daily basis, after taking injesting several medications that are recommended to be taken with food or milk. To discontinue his therapy after one "session" that was consisted of talk rather than physical therapy, and knowing that he needs help and the proper equipment to ensure he can maximize physical rehabilitation and minimize the chance of re- or further- injuring himself, is dangerous to say the least

Muhammad has been medically restricted from the floor, meaning he should not be forced to lay on hard surfaces. The inmates housed in the High Security units are locked out of their cells. If they have a need to lay down at any point of the day between 0800-1600 hours, it will be on the hard floor or on a metal bench.

For Mr. Muhammad, this amounts to eight hours of torture, daily. Beginning on 10-17-18, Mr. Muhammad addressed this issue with Medical, formally. He first tried informally when he was discharged from the Medical Wing on 10-16-18. R.N. Sam Osafu half addressed the issue which makes certain that inmate Muhammad gets the actual bunk in his assigned cell and not the thin mattress on the floor.

Unfortunately this does not resolve the issue adequately, because Muhammad is forced to sit or lay on hard surfaces for eight hours which needlessly aggravates his chronic injuries.

After he was told to address Classification, he wrote 1st Lieutenant Hovannhyan and received no response. Grieving this issue is impossible because 1st Lt. Aughavin refuses to respond to any of Mr. Muhammad's request for a Grievance Form.

Muhammad spoke to Lt. Garcia and was informed to write Medical, which brought about the response on the Kiosk (where Inmates are now forced to file medical request. The request was sent via Kiosk 11-2-18 and got the response "noted". On 11-1-18 Muhammad pointed out 1st Lt. Timothy saying it was Medical's job to house his because of his needs, Medical pushed responsibility back

to Classification. On 10-4-18 (Request 2756), Muhammad reminded Wuri that she said that he was scheduled to see a neurologist. He was not "seen" by a neurologist until 2-19.

The 11-1-18 (request 3397) and 11-2-18 (3464) requests to Main Medical via Kiosk were another example of Kassa and her staff and Stacey Kincaid and hers pretending to address an issue by creating more problems or ignoring requests, complaints all together.

On 11-12-18 Muhammad filed another complaint to Medical, expressing my intent to file a formal grievance. This too was ignored, otherwise there would exist the response from Vera Giles or Major Snyder (request 4103). The only response was "noted".

On 10-20-18, Muhammad complained to Sgt. Kent, supervisor of nurses about the lack of a M.R.I. and proper treatment, that is: adequate care. He complained also about the fact that considering the restriction from laying on the floor his is housed in a section of this facility.

Mr. Muhammad's shoulder and back are sensitive to touch. In Oct - January he could not endure

14

more than a light touch. He suggested and was granted the use of padding and ace bandage to help muffle the effect of people patting his shoulder, slapping him on the back or bumping him. It also helped muffle the pain from laying on the floor.

This was taken away from him without his having an MRI conducted. Muhammad knew and told Dr. Kassa, Sam Ofafu, N.P. Wuri, Dr. Antonin and anyone who would listen that the pain reminded him of nerve damage not muscle/skeletal.

He was ignored and the sling and padding was discontinued without an M.R.I. There is no other way to determine if nerve damage in Mr. Muhammad's elbow is responsible for the pain he suffers in his neck, right shoulder, shoulder blade, lower back, right hip and knee, right ankle and left hip.

On March 8, 2019, Mr. Muhammad had to explain to the receptionist at Fairfax M.R.I. that his pain is more than in his neck.

15

The new damage, reported on 10-2-18, concerned Mr. Muhammad's right shoulder in the rotator cuff region; right shoulder blade; neck (new pain and damage); right elbow and a molar chipped half through.

Why Dr. Lishan Kassa ordered an M.R.I. of the damage sustained only to his neck but not of the shoulder, elbow and shoulder blade that were injured in the 10-2-18 assault is rooted in she and her staff's rountine Deliberate Indifference to the needs of their patients.

On 10-9-18 or 10-10-18, Sgt. B.A. Pitts visited Mr. Muhammad in the hospital wing of Main Medical. From the start of the interview he strove to blame the incident on Muhammad. He said that Muhammad did not tell the Booking Deputy about his shoulder injury. Two things belie such a claim. 1.) At the time Muhammad was led to believe, by Dr. Kassa, that his neck injury is part of his "shoulder impingement" injury; and therefore would Muhammad mention his shoulder impairment if he mentioned his neck - as Pitts admitted.

2.) Muhammad has been escorted to several outside Orthopedic visits between May 2015 and September 2017. He has also asked Classification - therefore 1st Lt. Hovannhyan - to reclass him to

the Low Security side of the jail, where he would not have to lay on the floor, because they are not locked out from 0800-1600 as are High Security inmates. It was one of the reasons Muhammad remained in Administrative Segregation most of his confinement between 4-25-15 and 5-24-18. These examples show foreknowledge prior to 10-2-18 of Mr. Muhammad's physical impairments.

Sgt Pitts refused to tell Muhammad who assaulted him and pretended the S.E.R.T. were justified for their presence and use of excessive force. He ignored Muhammad reporting to the Deputies before they handcuffed and jacked his arms upward - as if he were resisting - and forcing him to bow over, by his neck, that he was permanently impaired. He was ignored by Pitts as was he by the S.E.R.T. members who assaulted him.

When Muhammad sent an Emergency Complaint to Lt. Arcia the Shift Supervisor for C squad on 10-2-18, it was not answered. He sent a request for a Grievance Form to the Accreditation Manager. The first two received no written response. The only sign that it was received was Sgt. Pitts' accusative inquiry.

17

The second request for a Grievance Form was on 10-14-18. When Mr. Muhammad sent a 3rd on 10-27-18, Lt. Aughavin answered, on 11-7-18.

His response to Muhammad's request for the names of those responsible for injuring him, so he could file a Criminal Complaint was, "The incident you referred to in your request on 10/14/18 was fully investigated. All actions were taken were appropriate."

This was not only a denial to reveal the identities of those who used Muhammad as a "test dummy" during what in fact was a training exercise - as Sgt. Trader and Deputy Hensel have admitted (behind Molloson's comment) - but a denial of Mr. Muhammad's right to file a Grievance.

Muhammad had already written Sheriff Stacey Kincaid, who has chosen not to respond; sent requests to Major Jabbar Shabazz; Captain Steve Elbert; Lt. Col. Kevin B. Andaraiese and Colonel Mark W. Sites. He sent a request to Sheriff Kincaid. The facility does not allow inmates to copy inmate requests or anything from this facility. Once Muhammad sent the other appeals to the above mentioned officials, since the one answered

18

by. Lt. Aughavin only Captain Elbert has sent a written response to Muhammad.

According to Captain Elbert, Mr. Muhammad was offered medical assistance but Muhammad supposedly refused. The video of the incident would prove Elbert is not being truthful. ~~Stad~~ Another way to prove the lie to this claim is that if LPN Woga was made aware of Muhammad's plight she would have told the deputies of Muhammad's handicaps in his right shoulder and neck, and ~~[scribbled out]~~ if that happened why was Muhammad still handcuffed behind his back, separated from the other inmates, placed in a cell and ordered to stay on his knees after the door was closed ( despite the Blood clot in his left leg limiting the time he can remain on his knees to 5-10 minutes); and taken back - some 20-30 min. later - to his block with his ~~arms~~ arms behind his back, jacked up and his neck forced down again. Elbert refused to give Muhammad the names of the S.E.R.T. members who assaulted him so that he could file a complaint against them.

Captain Elbert also pretended the incident was a routine High Security Cell Search. As Mr. Muhammad has already pointed out deputies perform security searches in

19

their standard uniform's, not riot gear; and not in the middle of the day. These are conducted early in the morning after A.M. shift change and after 1800 hrs lock down.

Unfortunately ~~some of the~~ Muhammad's request for his medical and institutional records (including a request for orders for transportation which are evidence of foreknowledge of Muhammad's prior shoulder/neck injury. These were specialist visits to a Orthopedist, Dr. Pak, in May 2015, Dec. 2015 April 2016 and September 2017; ~~and~~ to a Neurologist in May 2016; and a Cardiologist in April-May 2015. Plaintiff asked for his records from Dr. Kassa and Vera Giles (Medical Request 4105); and filed a sundry of request for a medical grievance form to Vera Giles; Dr. Lishan Kassa; and Director Rauf (11-5-18) 11-5-18, 12-3-18, 12-16-18, 12-17-18, 12-31-18, 12-28-18, 2-3-19, 2-4-19 Concerning the medical concerns connected to the 10-2-18 assault by the Emergency Response Team; the fall coming out ~~in~~ the shower on 12-6-18 wherein a new dent is now seen that was not there, yet no exam or treatment followed; the request to see a neurologist wherein Kassa sent him


20